**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>SONIC INDUSTRIES SERVICES, LLC,<br><br>            Defendant. | Case No. 4:25-cv-00035-JMB<br><br><br>Hon. John M. Bodenhausen |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   APPLICABLE LEGAL STANDARDS ............................................................... 3

III.  ARGUMENT ........................................................................................................ 3

    A.    The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Plausible Facts Supporting a Theory of TCPA Liability ................................................................................................... 4

    B.    The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because It Lacks Facts Supporting Other Essential Elements of Plaintiff's Claims ...................................................................................................... 11

IV.   CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...........................................................................6

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ..............................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................3, 8, 10

*Aussieker v. TSHB, LLC*,
2024 WL 379394 (E.D. Cal. Feb. 1, 2024)........................................................................3, 15

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) ....................................................................................14

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023)........................................................................6

*Barr v. Macys.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023)......................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................3, 8, 10

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) ......................................................................5, 8

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022)........................................................................6, 9

*Brown v. Nano Hearing Tech OPCP, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) ...........................................................................7

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) .........................................................................6

*Callier v. Nat'l United Grp., LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)....................................................................14

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) .......................................................................3, 14, 15

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ........................................................................11, 13, 14, 15

*Childress v. Liberty Mut. Ins. Co.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018) ..........................................................................5

*Christiansen v. West Branch Community School Dist.*,
674 F.3d 927 (8th Cir. 2012) ..................................................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page

*Cook v. ACS State & Local Sols., Inc.*,
  663 F.3d 989 (8th Cir. 2011) ...................................................................3

*Cunningham v. Daybreak Solar Power, LLC*,
  2023 WL 3985245 (N.D. Tex. June 13, 2023) ...................................10

*Cunningham v. McDonald*,
  2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018) ...................................11

*Cunningham v. Politi*,
  2019 WL 2519568 (E.D. Tex. Apr. 30, 2019) .....................................11

*Day v. Renny*,
  2020 WL 13002519 (D. Neb. July 24, 2020) ........................................5

*Dobronski v. Russo*,
  2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ...................................7

*Doyle v. GoHealth, LLC*,
  2023 WL 3984951 (D.N.J. Mar. 30, 2023) ............................................7

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ......................................6

*Gillam v. Reliance First Capital, LLC*,
  2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)..............................2, 11, 13

*Gulden v. Consol. World Travel Inc.*,
  2017 WL 3841491 (D. Ariz. Feb. 15, 2017)...........................................5

*Gutman v. Liberty Bankers Life Ins. Co.*,
  2025 WL 615128 (D.N.J. Feb. 26, 2025) .............................................13

*Hamilton v. Voxeo Corp.*,
  2009 WL 1868542 (S.D. Ohio June 25, 2009) .....................................14

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
  2013 WL 6571168 (N.D. Cal. Oct. 9, 2013)...........................................3

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015) .....................................10

*Hicks v. Alarm.com*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020)...............................5, 11, 12

*Hurley v. Messer*,
  2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ........................................8

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
  2015 WL 13648356 (W.D. Ark. June 16, 2015) ....................................8

*In re Dish Network, LLC*,
  28 F.C.C Rcd. at 6583....................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Joint Petition*
  *filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574 (2013)..........................5

*In re Rules and Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (Jul. 10, 2015) ...............................................................................6

*Johnson v. Progressive Advanced Ins. Co.*,
  587 F. Supp. 3d 277 (W.D. Pa. 2022)..........................................................................8

*Laccinole v. Appriss, Inc.*,
  453 F. Supp. 3d 499 (D.R.I. 2020).............................................................................14

*Laccinole v. Rocket Mortg., LLC*,
  609 F. Supp. 3d 68 (D.R.I. 2022).............................................................................14

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
  780 F.3d 1101 (11th Cir. 2015) .................................................................................15

*Lind v. Midland Funding, LLC*,
  688 F.3d 402 (8th Cir. 2012) .......................................................................................3

*Maldonado-Rodriguez v. Citibank, N.A.*,
  2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ...............................................................10

*Mantha v. QuoteWizard.com, LLC*,
  2022 WL 325722 (D. Mass. Feb. 3, 2022) ...........................................................12, 13

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)............................................5, 8, 10

*Metzler v. Pure Energy USA LLC*,
  2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)................................................................6

*Morgan v. U.S. Xpress, Inc.*,
  2018 WL 3580775 (W.D. Va. July 25, 2018)..............................................................12

*Murray v. Choice Energy, LLC*,
  2015 WL 4204398 (S.D. Ohio July 10, 2015)..............................................................8

*Nelums v. Mandu Wellness, LLC*,
  2023 WL 5607594 (D.N.M. Aug. 30, 2023) ...............................................................4

*Pascal v. Agentra, LLC*,
  2019 WL 5212961 (N.D. Cal. Oct. 16, 2019).............................................................4

*Rand-Heart of New York, Inc. v. Dolan*,
  812 F.3d 1172 (8th Cir. 2016) .....................................................................................3

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ....................................7, 10, 11, 13

*Rogers v. Postmates Inc.*,
  2020 WL 3869191 (N.D. Cal. July 9, 2020)................................................................4

iv

# TABLE OF AUTHORITIES
(continued)

**Page**

*Saunders v. NCO Fin. Sys., Inc.,*
  910 F. Supp. 2d 464 (E.D.N.Y. 2012) ......................................................1

*Sheski v. Shopify (USA) Inc.,*
  2020 WL 2474421 (N.D. Cal. May 13, 2020) ...........................................5

*Smith v. Direct Building Supplies, LLC,*
  2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ...............................................8

*Smith v. Vision Solar, LLC,*
  2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ......................................11, 12

*Sterling v. Securus Techs., Inc.,*
  2020 WL 2198095 (D. Conn. May 6, 2020) ............................................15

*Sundermann v. Golden Circle Real Est. Grp., L.L.C.,*
  2019 WL 7758601 (S.D. Iowa Oct. 29, 2019) .....................................4, 10

*Thomas v. Taco Bell Corp.,*
  582 F.App'x 678 (9th Cir. 2014) .............................................................4

*Wick v. Twilio Inc.,*
  2017 WL 2964855 (W.D. Wash. July 12, 2017) .......................................9

*Woodard v. Health Ins. All.,*
  2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ...............................................7

## STATUTES

47 U.S.C. § 227(c) ......................................................................... passim
47 U.S.C. § 227(f) ................................................................................11

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2) ............................................................... passim
47 C.F.R. § 64.1200(d) .................................................................. passim

## RULES

Fed. R. Civ. P. 8 ...................................................................................10
Fed. R. Civ. P. 12(b)(6) .................................................................. passim

## I.    <u>INTRODUCTION</u>

In his Complaint (Dkt. 1), Plaintiff Bobby Morris ("Plaintiff") alleges, in conclusory fashion, that Sonic Industries Services, LLC ("Sonic") violated certain "Do Not Call" ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5).[1] He bases his claims on text messages that he repeatedly concludes were sent to his cell phone by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf." *See, e.g.,* Dkt. 1, ¶¶ 4, 42, 56, 58, 60, 61, 63, 65. As demonstrated below, however, federal district courts in every Circuit have dismissed such bald and equivocating TCPA claims under Fed. R. Civ. P. 12(b)(6) for not meeting federal pleadings standards. Plaintiff's Complaint in this case should suffer the same fate.

That federal district courts have uniformly required TCPA plaintiffs to plead more than conclusory allegations to survive a motion to dismiss at the pleadings stage is for good reason. As the Court is aware, the TCPA has become one of the most heavily litigated statutes in the U.S. since its enactment in 1991, with dozens of new complaints filed weekly, largely styled as putative class actions like this case. This may be unsurprising given the broad relief the TCPA affords: up to $500 in statutory damages per call, which can be trebled to $1,500 for willful/knowing violations. *See* 47 U.S.C. § 227(c)(5). Thus, the TCPA naturally spawns litigation, and it can be quite lucrative for would-be plaintiffs and their counsel alike. And while attorneys' fees are not available under the statute generally, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through costly class action litigation. *Saunders v. NCO Fin. Sys.*, *Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). It is within

---

[1] Specifically, in Count I of the Complaint, Plaintiff seeks relief under the TCPA's implementing regulations governing the National DNC Registry. *See* 47 C.F.R. § 64.1200(c)(2). In Count II, he seeks relief under the TCPA's "internal" DNC procedural regulations. *See* 47 C.F.R. § 64.1200(d).

this backdrop that federal district courts have recognized that, at the pleadings stage in TCPA cases and particularly in putative TCPA class actions, they must balance the important goal of protecting consumers from unwanted telemarketing calls against the competing but equally important goal of protecting defendants from abusive litigation. Here, Sonic respectfully submits this case falls into the latter category, and that it should be dismissed in its entirety, for at least the following reasons:

**First**, it is well-accepted that, to successfully plead any TCPA claim under any provision and avoid dismissal under Rule 12(b)(6), all plaintiffs must first adequately allege a viable theory of liability under the TCPA—*i.e.,* direct or vicarious liability. Here, Plaintiff fails to plead sufficient non-conclusory facts supporting a plausible inference either that Sonic: (i) itself, and not a third party, literally took the steps necessary to "physically" send each text at issue, as required to plead direct liability; or (ii) was in a common law agency relationship with a third party who did (the touchstone of which in a TCPA case is having sufficient "control" over the "manner and means" of that party's telemarketing campaign), as required to plead vicarious liability. This pleading defect alone is fatal to Plaintiff's underline entire Complaint under federal law. Indeed, myriad federal district courts across the country have recognized that simply taking an "either/or" pleading approach and concluding that a "defendant or its agent called me" (like Plaintiff did here) is insufficient to avoid dismissal of any TCPA claim at the pleadings stage on these bases. This Court should rule similarly.

**Second**, Plaintiff's Complaint also lacks sufficient facts supporting other essential elements of his asserted claims, which further warrants its total dismissal. On this front, Plaintiff fails to plead actual facts, beyond his naked conclusions, supporting a plausible inference that: (i) he qualifies as a "residential telephone subscriber" within the meaning of the TCPA's implementing regulations (which is fatal to both Counts); or (ii) Sonic lacked internal DNC procedures prior to the transmission of the alleged texts (which is additionally fatal to Count II). Like when it comes to adequately

2

alleging a TCPA liability theory, Plaintiff cannot regurgitate the other legal elements of his claims (as he also did here) and hope to survive dismissal on these grounds under Rule 12(b)(6), either.[2]

## II.    APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without such factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Moreover, while the Court must generally accept well-pled factual allegations as true under Rule 12(b)(6), conclusory allegations, unwarranted or unreasonable inferences, or legal conclusions masquerading as facts do not suffice, are not to be accepted as true, and will not prevent dismissal. *See, e.g., Cook v. ACS State & Local Sols., Inc.,* 663 F.3d 989, 992 (8th Cir. 2011); *Christiansen v. West Branch Community School Dist.,* 674 F.3d 927, 934 (8th Cir. 2012); *Rand-Heart of New York, Inc. v. Dolan*, 812 F.3d 1172, 1176 (8th Cir. 2016). Simply put, Plaintiff must allege **specific facts** supporting the essential elements of each claim to avoid dismissal under Rule 12(b)(6). *See, e.g., Lind v. Midland Funding, LLC*, 688 F.3d 402, 409 (8th Cir. 2012).

## III.    ARGUMENT

Plaintiff's Complaint invokes Section 227(c)(5) of the TCPA and its related implementing regulations, which in pertinent part: (i) prohibit "initiat[ing]" more than one "telephone solicitation"

---

[2] Count II is also duplicative of Count I, and should therefore be dismissed on this additional basis. *See, e.g., Aussieker v. TSHB, LLC*, 2024 WL 379394, at *5 (E.D. Cal. Feb. 1, 2024), *report and rec. adopted*, 2024 WL 870449 (Feb. 29, 2024) (citing *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 WL 6571168, at *4 (N.D. Cal. Oct. 9, 2013)). ("[A] plaintiff cannot seek multiple damages where one call [allegedly] violates multiple [DNC] regulations."); *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (dismissing duplicative DNC count under Rule 12(b)(6)).

call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (Count I); and (ii) require any "person or entity" making a "call for telemarketing purposes" to "honor a residential subscriber's [DNC] request" made to them within a "reasonable time" and have policies and procedures in place meeting certain minimum standards (Count II). 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (d). As shown below, it lacks adequate facts supporting these critical elements.

**A.    The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Plausible Facts Supporting a Theory of TCPA Liability.**

As a threshold issue, Plaintiff fails to plausibly allege a theory of liability under the TCPA against Sonic, which alone warrants a total dismissal of his Complaint. Again, there are "two potential theories of liability under the TCPA that must be adequately pled in all cases: "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). In other words, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts in this Circuit have adopted this rule. *See, e.g., Sundermann v. Golden Circle Real Est. Grp., L.L.C.*, 2019 WL 7758601, at *2 (S.D. Iowa Oct. 29, 2019) (citing *Thomas* and *Abante*). Moreover, courts have widely held that failure to plausibly allege either liability theory warrants dismissal of any TCPA claim in its entirety under Rule 12, regardless of whether the plaintiff pled facts supporting other essential elements of the claim. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text

4

messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.); *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (holding that "[b]ecause [caller] identity is a ***necessary*** element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims") (emphasis added). Here, Plaintiff's Complaint fails to plausibly allege either theory.

As to the former theory, it is well-accepted that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, and that to "initiate" in this context means to "physically place" a call or send a text message directly. *See Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574, 6583 ¶ 26 (2013)) (dismissing where the allegations did not "lead to the inference that [defendant] sent or was directly involved in sending the text messages at issue").[3] However, direct TCPA liability "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 F.C.C Rcd. at 6583.

Put differently, for direct TCPA liability to attach in this case, Plaintiff must plausibly allege that Sonic <u>itself</u>—not a third party—<u>physically</u> sent each text message at issue <u>directly</u> to him. *See, e.g., Day v. Renny*, 2020 WL 13002519, at *6 (D. Neb. July 24, 2020) (dismissing where plaintiff "did not allege that [defendant] himself placed the calls at issue, and therefore he failed to state a

---

[3] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See, e.g., Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part,* 2024 WL 2794108 (May 31, 2024); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.,* 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Hicks v. Alarm.com,* 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). This represents a clear majority rule, applied nationwide.

cause of action for direct liability"); *Barnes v. SunPower Corp.*, 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis where plaintiffs did not plausibly allege the "[d]efendant itself" made the calls at issue); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call"); *Brownlee v. Allstate Ins. Co.*, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding that, to avoid dismissal, all TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that [the] defendant is [directly] liable for each call" or text at issue). As such, an alleged <u>indirect</u> connection to a call—*e.g.*, texts sent by an "agent"—will not suffice to plead such a liability theory. *See, e.g., In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability to attach); *Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding: "[A] defendant 'generally does not initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted).

Consistent with federal pleading standards, however, courts have also uniformly recognized naked conclusions lacking in specific factual support will not suffice to state a plausible direct TCPA liability theory, and thus have routinely dismissed such claims on the pleadings. As one such court aptly noted, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call"—like Plaintiff did here—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (holding "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to

6

support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (holding: "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal."); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing on this basis where the complaint concluded one defendant "physically" placed the subject calls, noting the "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

Courts have found that taking an equivocating "either/or" approach and baldly concluding that a "defendant or its agents called me" likewise does not suffice to plausibly allege direct TCPA liability under Rule 12(b)(6). *See, e.g., Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded the caller's "numbers belonged to" the defendant or its "agent" without sufficient factual support demonstrating the defendant itself physically placed each call at issue directly); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead a theory of TCPA liability); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (allegations the subject calls were "from Defendant, its employees and/or agents" deemed insufficient to plead directly liability, without more).

Myriad courts have also recognized that even a call or text allegedly offering the defendant's products, identifying the defendant by name, and/or originating "from" the defendant[4] does not, standing alone, allow for a plausible inference that the defendant itself (and not a third party)

---

[4] For example, a text could be "from" the defendant where it hired a vendor to market on its behalf. Such a communication may have indirectly originated "from" the defendant in a technical sense, but not be "physically" sent by the defendant ***itself*** to the plaintiff ***directly***, which is what matters here.

physically placed any call for direct liability purposes. *See, e.g., Meeks*, 2018 WL 1524067, at *1–5 (finding no direct liability, even though at-issue text message identified the defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided the defendant's website); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing on this basis where at-issue calls were allegedly "from" the defendant, because plaintiff failed to plead sufficient facts supporting an inference that the defendant itself physically placed them). In short, these well-reasoned authorities (among many others) show that the alleged content of the subject communications alone is not dispositive of this issue.[5]

Applying these firmly-rooted legal standards here, Plaintiff's Complaint reveals its fatal defects on the direct TCPA liability front from the very outset. Indeed, Plaintiff asserts in the preamble to his Complaint that this action is being brought against Sonic "***as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related***

---

[5] Why federal courts consistently evaluate the facial adequacy of TCPA complaints under Rule 12(b)(6) in this way makes perfect sense. It is axiomatic that, in order to survive any motion to dismiss in any federal case, complaints must provide adequate facts to establish "how, when, and where" a legal violation occurred. *Johnson v. Progressive Advanced Ins. Co.*, 587 F. Supp. 3d 277, 280 (W.D. Pa. 2022). Of course, this includes "who" committed the violation—an element especially important in TCPA cases given that the facial plausibility of a claim turns largely (if not mostly) on whether there are sufficient facts pled identifying who physically initiated or sent the subject calls or texts, as shown above. Further, the law is that TCPA plaintiffs must adequately plead direct liability (and thus properly identify who physically made the calls) in all cases ***without the benefit of discovery*** to avoid a dismissal on this basis. *See, e.g., Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing TCPA case on this basis where the plaintiff did not sufficiently identify who physically placed the subject calls, and noting that "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (same, ruling similarly). In short, conclusory allegations do not open the door to discovery.

*entities*" as to the subject texts. Dkt. 1 at p. 1 (emphasis added). Many other similarly-equivocating and wholly-conclusory allegations about the identity of the actual callers, suggesting third parties were possibly responsible for physically sending the subject texts, appear throughout the Complaint. *See, e.g., id.* ¶ 4 ("Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls ***from or on behalf of Defendant***."); ¶ 42 (putative class definition, including all persons who "received more than one telemarketing text message or call ***from or on behalf of Sonic***"); ¶ 56 ("Plaintiff alleges that the telephone solicitation calls ***made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf*** that are complained of herein are substantially likely to continue in the future if an injunction is not entered."); ¶ 58 ("The foregoing acts and omissions of ***Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf*** constitute numerous and multiple violations of the TCPA … by making telemarketing calls….to Plaintiffs [*sic*] and members of the [putative] Class despite their numbers being on the National Do Not Call Registry."); ¶¶ 60-61, 63, 65 (referring to "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf") (all emphases added). Again, however, a third party physically sending a text and a defendant allegedly having some indirect involvement in that communication simply is <u>not</u> "direct" TCPA liability as a matter of law. *See, e.g., Bennett,* 2022 WL 865837, at \*3. And as the authorities above show, that the texts here allegedly identified "Sonic" by name, standing alone, is not dispositive. *See also Wick v. Twilio Inc.,* 2017 WL 2964855, at \*3 (W.D. Wash. July 12, 2017) (recognizing that a communication "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes).

Moreover, it is plainly evident from the foregoing that what Plaintiff is <u>really</u> alleging here, at bottom, is that <u>either</u> Sonic <u>or</u> countless unidentified third parties are at fault for the texts at issue,

which federal courts have found to be "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). That rings especially true when it comes to stating a plausible direct TCPA liability claim, where the identity of the actual caller is the threshold element and must be adequately pled in every case as to every call to avoid a dismissal, as the many authorities cited above show. On the whole, however, Plaintiff's "[c]ontradictory allegations" above not only fail to state a plausible direct TCPA liability claim, but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and as such cannot avoid dismissal at the pleadings stage in any federal case. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). This Court should reach the same conclusions here and reject these obviously flawed allegations on their face.

Lastly, other than employing a few legal buzzwords—like "agents" or texts being sent "on behalf of" Sonic, or the like, as noted above—Plaintiff does not assert any facts supporting an inference that Sonic was in a common law agency relationship with any third party that texted him, let alone that Sonic had specific "control" over the "manner and means" of any third party caller's telemarketing campaign (which is the well-accepted touchstone of vicarious liability in a TCPA case and must also be adequately pled in all cases), even in a conclusory fashion. *See, e.g., Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023); *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6 (all dismissing). As such, Plaintiff's Complaint should also be dismissed on vicarious TCPA liability grounds. *See also Sundermann*, 2019 WL 7758601, at *3 (dismissing TCPA case where plaintiff did not plead facts supporting agency theory).

In sum, Plaintiff's "either/or" pleading approach has been rejected time and again by district courts across the country as woefully inadequate to plead <u>any</u> claim in federal court, much less a plausible TCPA liability theory. Thus, his entire Complaint should be dismissed on these grounds.

10

**B.** **The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because It Lacks Facts Supporting Other Essential Elements of Plaintiff's Claims.**

Plaintiff fails to plead facts supporting other key elements of his claims, for several reasons:

**First**, it is well-settled that, on their face, the TCPA's National DNC Registry provisions (which Plaintiff invokes for Count I) apply only to "*residential* telephone subscribers." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2519568, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524736 (June 19, 2019)) (dismissing under Rule 12(b)(6), and noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers."). The same is also true for the TCPA's internal DNC procedural regulations (which Plaintiff invokes for Count II)—*i.e.,* they only apply to "residential" subscribers, not to all phone numbers. *See, e.g., Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 629 (6th Cir. 2009) ([T]he FCC has promulgated [internal] regulations prohibiting telemarketers from placing telephone calls to residential telephone subscribers without following certain procedures.") (citing 47 C.F.R. § 64.1200(d); 47 U.S.C. §§ 227(c)(5) & (f)). Federal district courts have also widely held that plaintiffs hoping to bring any TCPA DNC claim must allege sufficient non-conclusory facts suggesting the subject phone number (*i.e.*, the number at which they received the alleged calls or texts) is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Hicks*, 2020 WL 9261758, at *5; *Smith v. Vision Solar, LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Cunningham v. Politi,* 2019 WL 2519568, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *4 (all dismissing DNC claims on this basis).

This has been true notwithstanding the FCC's rebuttable "presumption" regarding the

"residential" use of numbers purportedly listed on the National DNC Registry. *See, e.g., Vision Solar LLC*, 2020 WL 5632653, at *3 (dismissing where plaintiff did not sufficiently allege the "cell phone line in question is his residential phone, as required").[6] And of course, just parroting the statut does not suffice to allege this element and avoid a dismissal on this basis, either. *See, e.g., Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar claim applying only to "residential" lines, noting plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute" and need to be accepted as true under Rule 12(b)(6)). *See also Hicks*, 2020 WL 9261758, at *5 ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of *this* case or the use of his phone.") (emphasis in original).

Courts have also held whether someone qualifies as a "residential" subscriber for purposes of a TCPA DNC claim generally depends on certain conditions, including for example that the subject number "is the primary means of reaching the individual at their residence—that is, there is ***no other landline or phone at their residence*** which is instead the primary means of reaching them" at their residence. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added). Applying these maxims further warrants dismissal of the Complaint at bar.

In this case, Plaintiff merely concludes he uses the cell phone number on which he purportedly received the alleged texts "for his own personal, residential, and household needs and reasons." Dkt. 1, ¶ 23. Such bald allegations are insufficient to state a plausible DNC claim, without more, for at least two reasons. On the one hand, Plaintiff's conclusion that his number is used for "residential" purposes is not a fact, merely parrots the language of the statute, and thus it need not be accepted as true under Rule 12(b)(6) here. *See Morgan,* 2018 WL 3580775, at *2. *See also Hicks*,

---

[6] *See also* Case No. 2:20-cv-02185 (E.D. Pa.), Dkt. 1, ¶ 17 (dismissed complaint in *Vision Solar*, alleging plaintiff's cell phone number was on the National DNC Registry).

2020 WL 9261758, at *5 (dismissing substantially similar claim on this basis, where the plaintiff concluded his cell phone number was "not associated with a business and is for personal use"); *Gillam,* 2023 WL 2163775, at *4 (same, dismissing with prejudice); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4 (dismissing on this basis, holding that alleged "personal" use of the subject number was insufficient, and noting that "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers are for residential use").[7] On the other hand, Plaintiff does not allege any facts suggesting the cell phone number at issue here is the ***primary*** means of reaching him at his ***residence***, let alone that there is ***no landline or other phone at his residence*** that is the primary means of reaching him there. *See, e.g., Mantha,* 2022 WL 325722, at *6. In all, these facts are within Plaintiff's own knowledge and could easily be pled, if they exist. That Plaintiff failed to plead them is telling, and this failing underscores the many fatal defects in his DNC claims and in his Complaint overall. In short, under the weight of applicable federal authority above, Plaintiff has not plausibly alleged he is a "residential telephone subscriber" within the meaning of the TCPA, which further warrants dismissal of Counts I and II.

**Second**, federal courts recognizing such a cause of action have held that "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures[.]"*GVN Michigan, Inc.,* 561 F.3d at 632. In other words, the TCPA's internal DNC regulations, which Plaintiff invokes for his DNC claim in Count II, do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the

---

[7] Plaintiff's conclusion his cell number is "a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses" (Dkt. 1, ¶ 24) not only parrots the statute but also does not give any insight on how his cell phone number is ***actually used,*** which is what courts have found matters at the pleadings stage in DNC cases. Indeed, one could have a number "assigned to an exchange service for consumers" and yet never use it for residential purposes and use it only to transact ***business***. *Cf. Gutman v. Liberty Bankers Life Ins. Co.,* 2025 WL 615128, at *4 (D.N.J. Feb. 26, 2025) (dismissing where plaintiff did not properly allege residential use, including whether his number was used for business).

regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *DFS Servs. LLC*, 781 F. Supp. 2d at 592 (citing *GVN Michigan*, 561 F.3d at 632).

Thus, the question is whether the caller ***maintained*** such procedures in the first instance prior to making the violative calls, not merely whether additional calls or texts were received after asking to be put on a caller's internal DNC list, or any other reason proscribed by the regulations.[8] Failure to adequately allege the lack of internal procedures warrants dismissal. *E.g., Barr v. Macys.com, LLC,* 2023 WL 6393480, at *5 (S.D.N.Y. Sept. 29, 2023); *Laccinole v. Rocket Mortg., LLC*, 609 F. Supp. 3d 68, 73 (D.R.I. 2022); *Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 506 (D.R.I. 2020). And, consistent with federal pleading standards of course, it is not enough for a plaintiff to "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" to avoid dismissal. *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012).

In this case, Plaintiff fails to plead <u>any</u> facts regarding the implementation of Sonic's internal procedures at the time of the subject texts, much less how those procedures did or did not meet the statutory requirements. *See* Dkt.1, *generally*. Courts have consistently dismissed such deficient DNC claims. *See, e.g.*, *Laccinole*, 453 F. Supp. 3d at 505-06 (dismissing where allegations about defendant's "supposed failure to implement the requisite procedures [we]re not well-pleaded and must be discarded"); *Barr*, 2023 WL 6393480, at *5 (ruling similarly); *Callier v. Nat'l United Grp., LLC,* 2021 WL 5393829, at *7 & 9-10 (W.D. Tex. Nov. 17, 2021) (same). So should this Court.

<u>**Third**</u>, as noted above, "[f]or purposes of establishing damages [for an alleged DNC violation] under 47 U.S.C. § 227(c)"—which is what Plaintiff invokes for both Count I and Count

---

[8] For example, Plaintiff cannot maintain a separate cause of action under the internal DNC regulations solely on the basis of any alleged failure to provide a copy of an internal DNC policy on demand. *See, e.g., Hamilton v. Voxeo Corp.*, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) (granting summary judgment on this basis, applying *inter alia, GVN Michigan*). Rather, Plaintiff may " only recover for a call made at a time when [Sonic] did not have such a policy in place." *Id.*

II—"violations of multiple regulations constitute one violation." *Aussieker,* 2024 WL 379394, at \*5. This means that "[a] plaintiff cannot seek multiple damages where one call violates multiple [DNC] regulations." *Id*. As applied here, Count II is duplicative of Count I, as they both are based on the same alleged set of texts; as such, Count II should be dismissed for this additional reason. *See, e.g., DFS Servs. LLC*, 781 F. Supp. 2d at 592 (dismissing duplicative § 227(c) count under Rule 12(b)(6), holding that statutory damages under the TCPA are only recoverable on "per-call basis" and that "failing to state separate violations of the TCPA" DNC rules warranted dismissal for "fail[ing] to state claims upon which relief can be granted") (citing *GVN Mich.,* 561 F.3d at 631-632 ).

**Fourth**, apparently attempting to justify seeking treble damages under the TCPA, Plaintiff's Complaint also avers, in purely conclusory fashion, that the purported TCPA violations in this case were "negligent, willful, or knowing." Dkt. 1, ¶ 26. This too is insufficient under federal pleading standards and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at \*6 (D. Conn. May 6, 2020) (dismissing where allegations that TCPA violations were willful/knowing were mere legal conclusions unsupported by specific facts); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true."). Consequently, the Court should also dismiss these plainly-defective allegations, at the minimum.

## IV.   **CONCLUSION**

Plaintiff's Complaint should be seen for what it truly is: another opportunistic TCPA plaintiff throwing darts at a proverbial dart board, hoping one eventually hits on a theory of liability or a viable claim, looking for financial windfall. That is not what federal pleadings standards permit. Nor is that why the TCPA was enacted in the first place. Therefore, his Complaint must be dismissed.

Dated: March 5, 2025                          Respectfully submitted,


                                              By: /s/ *A. Paul Heeringa*
                                                  A. Paul Heeringa (Bar # 6288233IL)
                                                  MANATT, PHELPS & PHILLIPS, LLP
                                                  151 N. Franklin Street, Suite 2600
                                                  Chicago, IL 60606
                                                  Telephone: (312) 529-6300
                                                  Email: pheeringa@manatt.com


                                                  *Counsel for Defendant*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on, March 5, 2025, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.


                                              */s/ A. Paul Heeringa*

,