**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br><br>SONIC INDUSTRIES SERVICES, LLC<br><br>　　　　　　　　　Defendant. | Case No.<br>**4:25-CV-00035-JMB**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Bobby Morris ("Mr. Morris"), by his undersigned counsel, for this class action complaint against Defendant Sonic Industries Services, LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, as applicable, and alleges as follows:

**I.　　INTRODUCTION**

1.　　Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to

their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls, including text messages, to numbers on the National Do Not Call Registry, including his own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant, as well as those individuals who had previously asked to no longer receive calls.

## II.   PARTIES

5. Plaintiff Morris is an individual who resides in the Eastern District of Missouri, Eastern Division.

6. Defendant Sonic Corp. d/b/a Sonic Drive-In is a Delaware corporation with its headquarters and principal place of business in Oklahoma.

## III.   JURISDICTION AND VENUE

7. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8. Personal Jurisdiction: This Court has personal jurisdiction over Defendant. The Court has specific personal jurisdiction over Defendant because Defendant directed its conduct into this state by calling individuals with 636- area codes.

9. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this lawsuit–the receipt of the illegal text messages at issue–occurred in this District and Division.

## IV.   FACTS

**A.   The Enactment of the TCPA and its Regulations**

10. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

3

11. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    The TCPA Requires Entities To Have Sufficient Policies in Place To Prevent Unwanted Calls Before Making Telemarketing Calls**

15. The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

16. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

4

17. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

18. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

19. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

20. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

**C.  Unsolicited Telemarketing to Plaintiff**

21. Plaintiff Morris is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff Morris's cellular telephone number, (636) XXX-XXXX, is a telephone number that is used for residential purposes.

23. Plaintiff Morris uses the telephone number for his own personal, residential, and household needs and reasons.

24. For example, Plaintiff Morris uses the number to communicate with friends, family, and acquaintances, time household tasks, such as cooking, and for navigation while running household tasks.

25. Plaintiff Morris also uses the device associated with the number to fly a drone as a hobby.

26. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

27. Plaintiff Morris, like most people, no longer maintains any other residential telephone number, like a landline number. As such, the number at issue is his only residential telephone line.

28. The telephone number is the primary means of reaching Mr. Morris at his residence.

29. Plaintiff Morris's number has been on the National Do Not Call Registry since he registered it on the Registry on July 27, 2018, well prior to receiving the text messages at issue.

30. Despite that, Mr. Morris received at least 22 telemarketing text messages from the same "short code" 676642 between at least November 6, 2024 and present.

31. The text messages all were sent to advertise Sonic's goods and services.

32. The Plaintiff responded "Stop" to the first message, but the messages continued:



33.     In fact, the messages continued through the New Year and shortly prior to the filing of this Complaint. The Plaintiff is powerless to stop the messages, which continue incessantly and almost daily:



34. Following each of the links in the aforementioned text messages leads to a page on the Defendant Sonic's website.

35. For example, the first link leads to a page advertising Quarter Pound Double Cheeseburgers, and the second link leads to a page advertising Footlong Quarter Pound Coney Hot Dogs:



*Quarter Pound Double Cheeseburger Nearby For Delivery or Pick Up | Sonic*, https://sonicdrivein.me/3Rlz9VWYZKr [https://archive.md/DMgsm]; *Footlong Quarter Pound Coney Nearby For Delivery or Pick Up| Sonic*, https://sonicdrivein.me/lBdX4oaYNBW [https://archive.ph/KND0l].

36. The Defendant sent the text messages.

9

37. To be clear, plaintiff alleges that Sonic is directly liable for the text messages because it sent them.

38. Defendant Sonic sent the text messages directly because the 876642 short code is a Sonic short code, by Defendant Sonic's very own admissions.

39. Defendant Sonic sends text messages from the 876642 short code.

40. Defendant Sonic also instructs recipients of its messages to text that short code to opt out of receiving texts.

41. For example, following the link to the "FAQ & Contact" link at the very bottom of both websites states the following admission and instructions, which the Plaintiff followed *to the letter*:

> **What if I don't want to receive any more SONIC Drive-In texts?**
> To stop SONIC Drive-In texts, simply text **STOP** to the short code **876642**. You will receive one final text message confirming your decision to unsubscribe.

*FAQ & Contact Sonic Drive In | Sonic*, https://www.sonicdrivein.com/contact-us/ [https://archive.md/EuD7l].

42. The fact the 876642 is Sonic's short code is further confirmed through multiple third-party websites that aggregate short codes and their owners:

**Short Code 876642 SMS Marketing Information**

**SMS Programs:** Sonic Drive-In Alerts

**Registered on:** 12/16/16
**Campaign Name:** 876642

The SMS short code 876642 was registered on 12/16/16 for 876642.

For more information about the short code 876642 text HELP to 876642. Did you receive a text message from 876642 and you want to unsubscribe? You can unsubscribe from these text messages for 876642 by texting "STOP" to 876642.

Text the word **STOP** to **876642** to unsubscribe.

10

*Short Code 876642 SMS Marketing Information By SonicDrive-InAlerts*, TEXTINGWORLD, https://www.textingworld.com/short-code/usa/876642.html [https://archive.md/wip/3ZuI4]

43. As such, there can be no other logical conclusion other than that the Defendant sent the text messages. They all came from a short code that the Defendant admits it uses. They included links to the Defendant's food products. They advertised the Defendant's food products. And each message transmitted the Defendant's SONIC trademark.

44. There is no equivocation here: there exist no facts to show that any third party was possibly responsible for physically sending the subject texts.

45. Moreover, there can be no question that, based on the facts as pled here, the Defendant either failed to place the Plaintiff's number on its internal do not call list, or does not maintain such a list to begin with.

46. At minimum, the fact that the Plaintiff's texted "Stop" but the messages continued lend to the conclusion that the Defendant does not maintain any procedures for having an internal do not call list, for otherwise, the Plaintiff's "Stop" message would have been honored.

47. Essentially, in this respect, the Plaintiff pleads a variation of the doctrine of *res ipsa loquitor*, as such "Stop" requests are typically not dishonored absent some negligent or willful conduct on the part of the Defendant.

48. The Plaintiff does not presently know the precise technical reason why his "Stop" message was dishonored, but pleads that he will be able to uncover the same through discovery, including expert discovery.

49. The Plaintiff did not ask for the text messages.

50. Because they were sent to encourage the purchase of food, the text messages were telemarketing.

51. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

52. A reasonable seller would investigate into the reasons why they would be sending messages to numbers on the National Do Not Call Registry.

53. Plaintiff's privacy has been violated by the above-described telemarketing calls/text messages.

54. Plaintiff never provided his consent or requested these messages.

55. In fact, as illustrated above, the Plaintiff revoked his consent to receive the messages, but the messages continued for months after he revoked his consent.

56. In fact, the Plaintiff never signed up as an initial matter to receive text messages from the Defendant.

57. The aforementioned messages that were sent to the Plaintiff were unwanted.

58. The messages were non-consensual encounters.

59. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the messages occupied their telephone storage space, rendering them unavailable for legitimate communication and other legitimate uses, including while driving, working, and performing other critical household tasks for which storage is required.

### V.   CLASS ACTION ALLEGATIONS

60. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from

or on behalf of Sonic, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who had previously asked for the calls to stop or for a copy of Defendant's Do Not Call Policy and (4) within the four years prior to the filing of the Complaint.

61. Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

62. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

63. The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

64. Individual joinder of these persons is impracticable.

65. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

66. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the class members.

67. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

68. This class action complaint seeks injunctive relief and money damages.

69. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    b. whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

    c. whether Defendant made calls to Plaintiff and members of the Internal Do Not Call Class after having received a stop request; and

    d. whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

70. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

71. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

72. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendant, or any of its agents which discovery might reveal were also involved in the claims at issue.

73. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

74. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

75. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

15

76.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

77.     Defendant's violations were negligent, willful, or knowing, including because the messages continued after the Plaintiff texted "Stop."

78.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

79.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))**
**(On Behalf of Plaintiff and the Internal Do Not Call Registry Class)**

80.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

82. Defendant's violations were negligent, willful, or knowing, including because the messages continued after the Plaintiff texted "Stop."

83. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf's, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. An order enjoining Defendant and/or any of its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, as applicable, from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Classes of damages, as allowed by law; and

F.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.    DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this March 19, 2025.

*/s/ Anthony Paronich*
Anthony Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510