**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 4:25-cv-00035-SRC |
| v. | Hon. Stephen R. Clark |
| SONIC INDUSTRIES SERVICES, LLC, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    RELEVANT ALLEGATIONS ................................................................................... 2

    A.    Plaintiff's Pled Allegations .......................................................................... 2

    B.    Defendant's Extrinsic Evidence ................................................................... 3

III.   APPLICABLE LEGAL STANDARDS ..................................................................... 4

    A.    Fed R. Civ. P. 12(b)(1): Lack of Federal Subject Matter Jurisdiction ................. 4

    B.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim .................................... 5

IV.    ARGUMENT .............................................................................................................. 5

    A.    The FAC Should Be Dismissed Under Rule 12(b)(1) Because Plaintiff Did Not Suffer an "Injury in Fact" that is Traceable to Sonic's Conduct ..................... 5

    B.    The FAC Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Plausible Facts Supporting a Theory of TCPA Liability. .......................... 9

    C.    Count II Should Also Be Dismissed Under Rule 12(b)(6) Because the FAC Lacks Facts Supporting Other Essential Elements of an Internal DNC Claim. ..................................................................................................... 13

    D.    The FAC Should Be Dismissed With Prejudice. ..................................... 15

V.     CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ..........................................................11

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018) ...............................................................9

*American Bank v. City of Menasha*,
627 F.3d 261 (7th Cir. 2010) .....................................................................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................5

*Aspen v. Newsom*,
2010 WL 2721458 (N.D. Cal. July 7, 2010) ..............................................................5

*Aussieker v. TSHB, LLC*,
2024 WL 379394 (E.D. Cal. Feb. 1, 2024).................................................2, 14, 15

*Babare v. Sigue Corp.*,
2020 WL 8617424 (W.D. Wash. Sep. 30, 2020) ......................................................1

*Baccari v. Carguard Admin., Inc.*,
2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) .........................................................8, 9

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) ......................................................................14

*Barr v. Macys.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023)..........................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................5

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) ....................................................10, 13

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022)..............................................................11

*Brown v. Nano Hearing Tech OPCP, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) .............................................................12

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ..........................................................10

*Burgos v. Barrero*,
2017 WL 3575475 (C.D. Cal. June 30, 2017) ..........................................................12

*Callier v. Nat'l United Grp., LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021) .........................................................14

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Charvat v. DFS Servs. LLC*,
　781 F. Supp. 2d 588 (S.D. Ohio 2011) .........................................................2, 13, 15

*Charvat v. GVN Michigan, Inc.*,
　561 F.3d 623 (6th Cir. 2009) ...............................................................2, 13, 14, 15

*Cunningham v. Daybreak Solar Power, LLC*,
　2023 WL 3985245 (N.D. Tex. June 13, 2023) .......................................................10

*Day v. Renny*,
　2020 WL 13002519 (D. Neb. July 24, 2020) ........................................................11

*Dobronski v. Russo*,
　2024 WL 4363118 (E.D. Mich. Sept. 30, 2024).....................................................12

*Frank v. Cannabis & Glass, LLC*,
　2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .......................................................11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
　528 U.S. 167 (2000).................................................................................................4

*Golan v. FreeEats.com, Inc.*,
　930 F.3d 950 (8th Cir. 2019) ...................................................................................6

*Hall v. Xanadu Mktg., Inc.*,
　682 F. Supp. 3d 1278 (N.D. Ga. 2023).............................................................6, 7, 8

*Hamilton v. Voxeo Corp.*,
　2009 WL 1868542 (S.D. Ohio June 25, 2009) ......................................................14

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
　2013 WL 6571168 (N.D. Cal. Oct. 9, 2013).............................................................2

*Hicks v. Alarm.com*,
　2020 WL 9261758 (E.D. Va. Aug. 6, 2020)...........................................................10

*In re Dish Network, LLC*,
　28 F.C.C. Rcd. at 6583............................................................................................10

*In re Dish Network, LLC*,
　28 FCC Rcd. 6574 (2013)........................................................................................10

*Koeller v. Seemplicity Sec. Inc.*,
　2024 WL 4751306 (E.D. Mo. Nov. 12, 2024)........................................................15

*Laccinole v. Appriss, Inc.*,
　453 F. Supp. 3d 499 (D.R.I. 2020)..........................................................................14

*Laccinole v. Rocket Mortg., LLC*,
　609 F. Supp. 3d 68 (D.R.I. 2022)............................................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
　572 U.S. 118 (2014).................................................................................................4

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Lind v. Midland Funding, LLC*,
    688 F.3d 402 (8th Cir. 2012) ................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................4, 6

*Maldonado-Rodriguez v. Citibank, N.A.*,
    2013 WL 350814 (N.D. Ind. Jan. 28, 2013) .......................................12

*Meeks v. Buffalo Wild Wings, Inc.*,
    2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)...............................10, 13

*Metzler v. Pure Energy USA LLC*,
    2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)..................................10, 13

*Milliman v. County of Stearns*,
    2013 WL 5426049 (D. Minn. Sept. 26, 2013) ....................................15

*Moss v. United States*,
    895 F.3d 1091 (8th Cir. 2018) ..............................................................5

*Murray v. Choice Energy, LLC*,
    2015 WL 4204398 (S.D. Ohio July 10, 2015)...............................12, 13

*Nelums v. Mandu Wellness, LLC*,
    2023 WL 5607594 (D.N.M. Aug. 30, 2023) .........................................9

*Parsons v. U.S. Air Force*,
    221 F.3d 1343 (8th Cir. 2000) ...........................................................5, 8

*Pascal v. Agentra, LLC*,
    2019 WL 5212961 (N.D. Cal. Oct. 16, 2019).......................................9

*Rand-Heart of New York, Inc. v. Dolan*,
    812 F.3d 1172 (8th Cir. 2016) ..............................................................5

*Rogers v. Assurance IQ, LLC*,
    2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ................................10

*Rogers v. Postmates Inc.*,
    2020 WL 3869191 (N.D. Cal. July 9, 2020)..........................................9

*Saunders v. NCO Fin. Sys., Inc.*,
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) ..................................................1

*Selby v. Ocwen Loan Servicing, LLC*,
    2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) ......................................6

*Sheski v. Shopify (USA) Inc.*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020)....................................10

*Smith v. Vision Solar LLC*,
    2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) .....................................11

# TABLE OF AUTHORITIES
(continued)

**Page**

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................4

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
   899 F.3d 500 (8th Cir. 2018) ............................................................4, 6, 8, 9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ..................................................................................4

*Sterling v. Securus Techs., Inc.*,
   2020 WL 2198095 (D. Conn. May 6, 2020) ...........................................15

*Stewart v. Network Cap. Funding Corp.*,
   549 F. Supp. 3d 1058 (C.D. Cal. 2021) ..............................................6, 8

*Sundermann v. Golden Circle Real Est. Grp., L.L.C.*,
   2019 WL 7758601 (S.D. Iowa Oct. 29, 2019) ...................................10, 13

*Thomas v. Taco Bell Corp.*,
   582 F.App'x 678 (9th Cir. 2014) .......................................................9, 10

*Thompson v. Vintage Stock, Inc.*,
   2025 WL 385681 (E.D. Mo. Feb. 3, 2025) ...........................................7, 8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................6

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ..............................................................6

*Warth v. Seldin*,
   422 U.S. 490 (1975) .................................................................................6

*Wick v. Twilio Inc.*,
   2017 WL 2964855 (W.D. Wash. July 12, 2017) ..................................11

*Winner v. Kohl's Dept. Stores, Inc.*,
   2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) .....................................6, 8

*Woodard v. Health Ins. All.*,
   2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ..........................................11

## STATUTES

47 U.S.C. § 227(c) .................................................................1, 7, 14, 15

## OTHER AUTHORITIES

47 C.F.R. § 64.1200 ..................................................................1, 7, 14

## RULES

Fed. R. Civ. P. 12(b) ..................................................................... passim

I.    **INTRODUCTION**

Plaintiff Bobby Morris ("Plaintiff") alleges Sonic Industries Services, LLC ("Sonic") violated certain "Do Not Call" ("DNC") provisions of the Telephone Consumer Protection Act (47 U.S.C. § 227(c)(5), the "TCPA") by sending, or causing others to send, text messages to his cell phone.[1] As demonstrated below, however, Plaintiff lacks standing under Article III of the U.S. Constitution to bring a TCPA claim. He also fails to plead sufficient non-conclusory facts supporting a plausible inference that Sonic bears any legal responsibility for those texts, let alone that they even violated the TCPA in the first place. Such a claim cannot survive dismissal.

That federal district courts uniformly require TCPA plaintiffs to plead more than conclusory allegations to survive a motion to dismiss at the pleadings stage is for good reason. As the Court is aware, the TCPA has become one of the most heavily litigated statutes in the United States since its enactment in 1991, with dozens of new complaints filed weekly, largely filed as putative class actions like this one. This is unsurprising given the TCPA affords up to $500 in statutory damages per call, which can be trebled to $1,500 for willful/knowing violations. *See* 47 U.S.C. § 227(c)(5). Thus, the TCPA naturally spawns litigation, and it can be quite financially lucrative for would-be plaintiffs and their counsel alike. *See Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012) ("remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers").[2] Given the high likelihood of abuse, therefore, federal district courts have tacitly recognized the need to balance the goal of protecting consumers from unwanted robocalls

---

[1] Specifically, in Count I of the FAC, Plaintiff seeks relief under the TCPA's implementing regulations governing the National DNC Registry. *See* 47 C.F.R. § 64.1200(c)(2). In Count II, he seeks relief under the TCPA's "internal" DNC procedural regulations. *See* 47 C.F.R. § 64.1200(d).

[2] *See also Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *American Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (some plaintiffs can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit").

against the competing but equally important goal of protecting defendants from abusive and potentially financially ruinous litigation. As such, federal district courts across the country have dismissed ill-pled TCPA claims, like Plaintiff's, at the pleadings stage on Article III standing grounds and/or for failing to plead sufficient plausible facts supporting the essential elements of the TCPA claim(s) being asserted. Plaintiff's First Amended Complaint (Dkt. 11, "FAC") in this case should suffer the same fate, and be dismissed <u>with prejudice</u>, for at least the following reasons:

**First**, as a threshold matter, the FAC should be dismissed in its entirety under Rule 12(b)(1) because extrinsic evidence (which this Court may properly consider for purposes of Sonic's factual standing challenge below) demonstrates that Plaintiff consented to the texts and did not opt-out, and thus did not suffer any "injury in fact" traceable to Sonic, as is required for Article III standing.

**Second**, Plaintiff's FAC is also facially-deficient and therefore should also be dismissed under Rule 12(b)(6). It is well-accepted that, to successfully plead any TCPA claim, all plaintiffs must first adequately allege a viable theory of liability under the TCPA—*i.e.,* direct or vicarious liability. This pleading defect alone is fatal to Plaintiff's <u>entire</u> FAC under federal law. Moreover, Plaintiff fails to plead facts supporting an inference Sonic lacked internal DNC procedures prior to the transmission of the alleged texts, which is also fatal to his claim in Count II.[3]

## II.    RELEVANT ALLEGATIONS

### A.    <u>Plaintiff's Pled Allegations</u>

Plaintiff's FAC alleges that, despite having registered his cell number on the National DNC

---

[3] Count II is also duplicative of Count I and should therefore be dismissed under Rule 12(b)(6) on this additional basis. *See, e.g., Aussieker v. TSHB, LLC*, 2024 WL 379394, at *5 (E.D. Cal. Feb. 1, 2024), *report and rec. adopted*, 2024 WL 870449 (Feb. 29, 2024) (citing *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 WL 6571168, at *4 (N.D. Cal. Oct. 9, 2013)) ("[A] plaintiff cannot seek multiple damages where one call [allegedly] violates multiple [DNC] regulations."); *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (dismissing similarly duplicative DNC count under Rule 12(b)(6)) (citing *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 631-62 (6th Cir. 2009)).

registry in 2018, Plaintiff "received at least 22 telemarketing text messages from the same 'short code' 676642 between at least November 6, 2024 and present" advertising Sonic's goods and services, without consent. Dkt. 11, ¶¶ 29, 30-31, 54. He concludes Sonic sent the texts because the short code "is a Sonic short code" and Sonic's website instructs individuals to text this short code to opt out of receiving text messages. *Id*. ¶¶ 36-41. Yet, Plaintiff also still inconsistently alleges elsewhere that "Defendant and/or its affiliates, agents, and/or other persons or entities" were responsible for the subject text messages. *Id*. ¶¶ 74, 76, 78, 79, 81, 83, Prayer.

Further, according to Plaintiff, he texted "Stop" in response to the first message, but the messages continued. *Id*. ¶ 32. Plaintiff claims he never "ask[ed] for," "requested," "provided his consent," or "signed up" to receive text messages from Sonic. *Id*. ¶¶ 49, 54, 56. And despite admitting that Sonic instructs consumers how to opt-out of receiving texts (which itself demonstrates that Sonic indeed has the internal DNC procedures he claims Sonic lacks), Plaintiff concludes that Sonic "either failed to place the Plaintiff's number on its internal do not call list, or does not maintain such a list to begin with." *Id*. ¶ 45. As a result of these text messages, Plaintiff alleges that his privacy has been invaded and he has been "annoyed" and "harassed" by the messages that have "occupied [ ] telephone storage space" on his phone. *Id*. ¶¶ 53, 59.

### B.   **Defendant's Extrinsic Evidence**

Extrinsic evidence tells a much different story than the conclusory allegations in his pleading. Indeed, Plaintiff expressly consented to receiving texts from or on behalf of Sonic through a common "double opt-in" process. Specifically, on October 10, 2020, at approximately 1:06 am, Plaintiff affirmatively sent an inbound text with the keyword "STLOUIS" to the short code 876642 from a device associated with the cell phone number referenced in the FAC. *See* Declaration of Lauren Skelly ("Skelly Decl."), attached, at ¶ 9 & Exhibit A thereto; *see also* ECF 11, ¶ 22. In response, Plaintiff received a text message stating "SONIC Drive-In: Reply Y to get

up to 10 promo msgs/mo. Consent not required/condition for purchase. Reply STOP to stop. Msg&Data rates may apply."Skelly Decl., ¶ 10. Plaintiff replied with "Y" that same day and then received an additional confirmatory text stating, "Thank you! Stay tuned for SONIC app & upcoming text offers." *Id*. ¶ 11. This message could only have been sent from someone in possession of his cell phone. *Id*. ¶ 13. Additionally, there is no record of any inbound "STOP" or other opt-out communication from Plaintiff at any time. *Id*. ¶ 14.

## III.    APPLICABLE LEGAL STANDARDS

### A.    Fed R. Civ. P. 12(b)(1): Lack of Federal Subject Matter Jurisdiction

Rule 12(b)(1) provides for dismissal of a complaint for lack of federal subject matter jurisdiction where, as here, a plaintiff fails to establish Article III standing. *See*, *e.g.*, *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 503–04 (8th Cir. 2018). To demonstrate Article III standing, Plaintiff must show that it has: (1) suffered a concrete and particularized "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "injury in fact" element is considered the "foremost" of the three. *Spokeo*, 578 U.S. at 338-39 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). To meet this element, a plaintiff must allege something more than "a bare procedural violation." *Id.* at 342. Rather, the injury complained of must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000). Further, the second standing element requires that the alleged "injury in fact" be "fairly traceable" to the <u>defendant's</u> conduct, not a third party. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125 (2014). "The absence of any one element [out of the three required] deprives a plaintiff of Article III standing and requires dismissal" for lack of federal subject matter jurisdiction under Rule 12(b)(1).

*Aspen v. Newsom,* 2010 WL 2721458, at *1 (N.D. Cal. July 7, 2010) (citation omitted). Furthermore, "[m]otions under 12(b)(1) may assert either a 'facial' or 'factual' attack on jurisdiction." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). For a factual standing challenge, as is asserted in this Motion, a court may look outside the pleadings to affidavits or other documents. *Id*. In doing so, the district court is "free to weigh evidence and determine the existence of its power to hear the case, and no presumptive truthfulness attache[s] to [the plaintiff's] allegations." *Parsons v. U.S. Air Force*, 221 F.3d 1343 (8th Cir. 2000).

### B.    Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id*. Naked allegations without such factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). Simply put, Plaintiff must allege ***specific facts*** supporting the essential elements of each claim to avoid dismissal under Rule 12(b)(6). *See, e.g., Lind v. Midland Funding, LLC*, 688 F.3d 402, 409 (8th Cir. 2012). While the Court must generally accept well-pled facts as true under Rule 12(b)(6), conclusory allegations, unwarranted or unreasonable inferences, or legal conclusions masquerading as facts are not to be accepted as true, and will not prevent dismissal. *See, e.g., Rand-Heart of New York, Inc. v. Dolan*, 812 F.3d 1172, 1176 (8th Cir. 2016).

## IV.    ARGUMENT

### A.    The FAC Should Be Dismissed Under Rule 12(b)(1) Because Plaintiff Did Not Suffer an "Injury in Fact" that is Traceable to Sonic's Conduct.

As a threshold matter, Plaintiff lacks standing, and thus this Court lacks proper jurisdiction

to hear his claim. The touchstone of Article III standing is that the plaintiff must be able to show an injury-in-fact—*i.e.,* a violation of a legally protected interest—regardless of the merits of the claim. *See Lujan,* 504 U.S. at 560; *see also TransUnion LLC v. Ramirez,* 594 U.S. 413, 417 (2021) (holding no standing for "bare procedural violations divorced from any concrete harm" and "[n]o concrete harm, no standing."); *Warth v. Seldin,* 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal[.]"); *Nomax,* 899 F.3d at 503–504 ("Even where 'a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right,' a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'").

In this regard, the Eighth Circuit has recognized that the "harm to be remedied by the TCPA was 'the ***unwanted*** intrusion and nuisance of ***unsolicited*** telemarketing phone calls and fax advertisements.'" *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (quoting *Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037, 1043 (9th Cir. 2017) (emphasis added)). Yet, "receipt of ***any*** call [does not automatically] satisf[y] the concrete injury in fact requirement for standing to assert TCPA claims" and, instead, the TCPA is designed to prevent only on unwanted and unsolicited telemarketing calls. *Selby v. Ocwen Loan Servicing, LLC*, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017) (citing *Van Patten*, emphasis added). In other words, calls or text messages that are ***solicited by the recipient*** (such as where they provide consent) do not meet the injury-in-fact requirement. *See, e.g., Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017); *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023); *Nomax, Inc.,* 899 F.3d at 504 (all dismissing under Rule 12(b)(1) on standing grounds where the evidence demonstrated plaintiffs consented to the subject communications).

The "harm" Plaintiff alleges in this case is the receipt of multiple "telephone solicitation" text messages in violation of the TCPA's DNC provisions. However, a message does not qualify as a "telephone solicitation" and, therefore, does not violate the TCPA where (among other things) the plaintiff gave their "prior express invitation or permission" — *i.e.*, their consent — to receive the message. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (f)(15). Thus, to have suffered an "injury in fact" sufficient for Article III standing in this case, Plaintiff must show that the alleged text messages were sent without his "permission" or consent. *See also Hall*, 682 F. Supp. 3d at 1285-1286 (finding plaintiff did not receive a "telephone solicitation" and thus lacked Article III standing because the evidence showed she consented—*i.e.*, her consent made the call not a "telephone solicitation"). Here, the extrinsic evidence provided with this Motion demonstrates the opposite: that Plaintiff (i) expressly invited and consented to receive promotional text messages from or on behalf of Sonic, and (ii) did not send a "STOP" request. *See* Skelly Decl., ¶¶ 9-13 & Ex. A thereto. *See also Thompson v. Vintage Stock, Inc.*, 2025 WL 385681, at *5 (E.D. Mo. Feb. 3, 2025) (Clark, J.) (finding plaintiff provided prior express invitation or permission by entering phone number in store system, which "clearly stated that one should enter her phone number to receive coupons and sales notices, and [] warned that "[m]essage and data rates may apply").

The *Thompson* case is instructive on this issue. There, the plaintiff was informed that by taking affirmative action (i.e., providing her phone number), she would receive coupons and sales notices and that "message and data rates may apply." This Court found the plaintiff's actions sufficient to constitute prior express invitation or permission to receive telephone solicitations from the defendant, holding that by entering her phone number, the plaintiff "would undoubtedly expect" that she would receive coupons and sales notices from the defendant, that the defendant would send those coupons to the phone number she entered, and that they would arrive in message

format. *Id*. *See also Hall,* 682 F. Supp. 3d at 1285-1286 (dismissing on standing grounds based on factual standing challenge where plaintiff consented to receive the subject communications).

Likewise here, the evidence shows Plaintiff was informed that by replying "Y" from his cell phone number, he would receive promotional messages from or on behalf of Sonic at that phone number, and that the promotions would arrive in message format. *See* Skelly Decl., ¶¶ 9-13 & Ex. A thereto. Having provided his "prior express invitation or permission" for promotional messages, Plaintiff has not suffered an "injury in fact" sufficient to confer Article III standing. *See Thompson*, 2025 WL 385681, at *5. And though Plaintiff alleges that he: (i) "never provided his consent or requested these messages"; (ii) "never signed up as an initial matter to receive text messages from the Defendant"; (iii) the text messages were "unwanted" and "non-consensual"; (iv) texted "Stop" in response to the first message; and (v) suffered harm because his "privacy has been violated and [he] w[as] annoyed and harassed, and the messages "occupied [] telephone storage space," the Court need not presume the truthfulness of these allegations. *See Parsons*, 221 F.3d 1343. Indeed, the weight of the evidence does not support the truthfulness of the allegations that ***any*** of the alleged text messages at issue in this case were "unwanted" or "non-consensual." *See* Skelly Decl., ¶¶ 9-14 & Ex. A.

In short, because of his consent, Plaintiff at best has alleged a "bare procedural violation" divorced from the "real harms" the TCPA was designed to prevent, not an actionable telephone solicitation message. Thus, he has not suffered an "injury in fact" sufficient to confer subject matter jurisdiction over his claim, and the entire FAC must be dismissed under Rule 12(b)(1). *See, e.g., Winner, Stewart, Hall, Nomax, supra* (all dismissing TCPA claims on this basis). *See also Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (dismissing based on factual standing challenge, where defendant submitted evidence showing it did not make or authorize

the alleged calls to the plaintiff and, therefore, that the injury alleged was not traceable to defendant).

Even if the Court assumes that Plaintiff's allegations of alleged harm are sufficient to allege an injury-in-fact (and they are not, given the evidence), Plaintiff cannot show his alleged harm is traceable to Sonic's alleged failure to comply with the TCPA. *See also Baccari*, *supra* (dismissing on this basis). Indeed, Plaintiff would not have received ***any*** text messages had he not affirmatively sent an inbound text message to a short code used by Sonic and then confirmed his consent by replying "Y" when prompted. *See* pp. 7-8, *supra*. In other words, it is ***Plaintiff's*** conduct—not Sonic's—that caused the subject texts to be sent. Further, Sonic's records do not reflect that any "Stop" message was ever received from Plaintiff's phone number. *Id.* In this posture, Plaintiff cannot show that he suffered an injury-in-fact that is traceable to any conduct of Sonic. *See, e.g., Nomax*, 899 F.3d at 504 (holding plaintiff lacked standing where it consented to receive faxes from the defendant because there was "no causal connection between the injury and the conduct complained of"). The FAC must be dismissed under Rule 12(b)(1) in its entirety for these reasons.

**B.    The FAC Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Plausible Facts Supporting a Theory of TCPA Liability.**

Aside from the fatal threshold issue of standing above, the entire FAC is also ripe for dismissal on its face under Rule 12(b)(6) for failure to plausibly allege a theory of liability.

There are two potential theories of TCPA liability: (1) direct liability; and (2) vicarious liability. *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)).[4] Thus, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC,* 2019 WL 5212961,

---

[4] Failure to plausibly allege either theory warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u> under Rule 12(b)(6), regardless of whether there are facts supporting other essential elements of the claim. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023).

at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Despite still referring to third parties at various points, Plaintiff's FAC purports to be only alleging a direct liability theory. *See* Dkt. 11, ¶ 37. It failed.

Indeed, direct TCPA liability applies only to persons or entities that directly "make" or "initiate" a call or send a text. *See Sundermann v. Golden Circle Real Est. Grp., L.L.C.*, 2019 WL 7758601, at *2 (S.D. Iowa Oct. 29, 2019) (citing *Thomas*). Federal courts have uniformly interpreted the terms "make" or "initiate" as the act of "physically" placing (or sending) the complained-of communications. *See Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013) (discussing differences between direct and vicarious liability and the standards for pleading same, and dismissing where plaintiff failed to adequately plead either)); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (holding plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" or text at issue) (emphasis added); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing, holding plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call"). [5]

Conversely, direct TCPA liability "generally does ***not*** include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results

---

[5] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, federal district courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, and many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the calls or send the text messages at issue. *See, e.g., Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part on other grounds,* 2024 WL 2794108 (May 31, 2024); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023).

in the making of a telephone call." *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6583 (emphasis added); *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing, holding: "[A] defendant 'generally does not initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted). In other words, for direct TCPA liability to attach here, Plaintiff must plausibly allege Sonic <u>itself</u>—and not some third party—<u>physically</u> sent <u>each</u> text at issue to him <u>directly</u>. *See, e.g., Day v. Renny*, 2020 WL 13002519, at *6 (D. Neb. July 24, 2020) (dismissing where plaintiff "did not allege that [defendant] himself placed the calls at issue" directly to the plaintiff). However, "[m]erely alleging [a defendant] 'made' or 'initiated' [a] call" or sent a text "is not sufficient to allege a [direct] TCPA [liability] claim" under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing, holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal.").

As applied here, Plaintiff fails to adequately allege direct TCPA liability. At best, Plaintiff alleges he received texts from a short code "used by" Sonic that allegedly advertised its goods and services. Dkt. 11, ¶¶ 30-43. These allegations, without more, are insufficient to allege direct TCPA liability. *See, e.g., Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("[M]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability); *Aaronson v. CHW Grp., Inc*., 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing where alleged call originated from a number "belonging" to defendant, holding "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" at issue); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (same, citing *Aaronson*).

Moreover, despite his amendments,[6] Plaintiff also still takes an equivocating "either/or" pleading approach, concluding that the texts were "from" Sonic or Sonic's "affiliates, agents, and/or other persons or entities"—in other words, that either Sonic or an unidentified third parties sent them. Dkt. 11, ¶¶ 74, 76, 78, 79, 81, 83, Prayer.[7] Yet, federal courts have found to be "woefully insufficient to state a claim of *any sort*." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). That rings especially true when it comes to stating a plausible direct TCPA liability claim, where the identity of the actual caller is the threshold element and must be adequately pled as to every call to avoid a dismissal, as the authorities cited above show. Indeed, it is well accepted that merely concluding the subject calls were "from" the defendant or its "agents"—even if the defendant's name is used or its products were being sold—is not enough to avoid a dismissal, standing alone. *See, e.g., Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded the caller's "numbers belonged to [defendant or its] agent," without supporting facts suggesting defendant itself physically placed each call directly to plaintiff); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead a theory of liability); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call

---

[6] Plaintiff's FAC now relies on the contents of Sonic's website. *See* Dkt. 11, ¶ 41. However, nothing on that website indicates Sonic <u>itself</u>, rather than a third party, physically texted him.

[7] This is the same flawed pleading tactic Plaintiff took with his original Complaint, where the preamble stated that this action is being brought against Sonic "***as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities***" as to the subject texts. Dkt. 1 at p. 1 (emphasis added). *See also id.,* ¶¶ 4, 42, 56, 58, 60, 61, 63, 65 (reflecting similar allegations referring to Sonic and third parties). That Plaintiff did not remove these allegations when amending is telling, and reveals that he does not actually know who physically sent the subject texts. *See also Burgos v. Barrero*, 2017 WL 3575475, at *2 (C.D. Cal. June 30, 2017), *report and rec. approved*, 2017 WL 3575223 (C.D. Cal. Aug. 16, 2017) ("The principle that a court may look to prior pleadings in determining the plausibility of an amended complaint is well-established.") (citations omitted).

was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided the defendant's website). These authorities (and many others) show that content of a call or text alone is not dispositive of this issue.[8]

In sum, Plaintiff's flawed "either/or" pleading approach is inadequate to plead any plausible TCPA liability theory.[9] Thus, his entire FAC should be dismissed on these additional grounds.

### C.    Count II Should Also Be Dismissed Under Rule 12(b)(6) Because the FAC Lacks Facts Supporting Other Essential Elements of an Internal DNC Claim.

Plaintiff's internal DNC claim in Count II is facially-defective for additional reasons:

**First**, federal courts recognizing such a cause of action have held that a violation of the TCPA's internal DNC regulations stems from "the initiation of the phone call without having implemented the minimum procedures[.]" *GVN Michigan, Inc.,* 561 F.3d at 632. In other words, the TCPA's internal DNC regulations do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *DFS Servs. LLC*, 781 F. Supp. 2d at 592 (citing *GVN Michigan*, 561 F.3d at 632). Thus, the question is whether the caller

---

[8] This analytical approach is logical and in recognition that companies often hire third party vendors to communicate with consumers. For example, a call or text could be "from" the defendant where it hired a third party to physically send it on its behalf. Courts have found such a communication may have ***indirectly*** originated "from" the defendant in a very technical sense but was not "physically" placed directly by the defendant itself, as required for direct TCPA liability (rather, it is that third party who could be directly liable). *See, e.g., Murray, Belleville*, and *Metzler*, *supra*. *See also Meeks*, 2018 WL 1524067, at *1–5 (finding no direct TCPA liability, even though at-issue texts allegedly identified defendant by name and contained a link to its website).

[9] As noted above, despite still employing a few legal buzzwords—like "agents" or texts being sent "on behalf of" Sonic, or the like— Plaintiff's FAC purports to now assert only a direct liability theory. *See* Dkt. 11, ¶ 37. Nevertheless, as it plainly does not plead any facts supporting any common law agency theory, Plaintiff's FAC should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Sundermann*, 2019 WL 7758601, at *3 (dismissing TCPA case on this basis).

13

*maintained* such procedures in the first instance prior to making the violative calls, not merely whether additional calls or texts were received after asking to be put on a caller's internal DNC list, or any other reason proscribed by the regulations.[10] Failure to adequately allege with facts the lack of internal procedures warrants dismissal. *E.g., Barr v. Macys.com, LLC,* 2023 WL 6393480, at *5 (S.D.N.Y. Sept. 29, 2023); *Laccinole v. Rocket Mortg., LLC,* 609 F. Supp. 3d 68, 73 (D.R.I. 2022); *Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 506 (D.R.I. 2020). And, consistent with federal pleading standards, it is not enough for a plaintiff to "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" to avoid dismissal. *Bailey v. Domino's Pizza, LLC,* 867 F. Supp. 2d 835, 842 (E.D. La. 2012). Here, Plaintiff's allegations support the conclusion that Sonic *had* implemented and maintained the required procedures. Indeed, Plaintiff alleges that Sonic's website provides detailed instructions informing consumers how they can opt-out of receiving text messages. *See* Dkt. 11, ¶¶ 40-41. Plaintiff's conclusory (and contradictory) allegations suggesting Sonic did not maintain such procedures are not supported by factual allegations and should be dismissed. *See, e.g.*, *Laccinole*, 453 F. Supp. 3d at 505-06 (dismissing where allegations about defendant's "supposed failure to implement the requisite procedures [we]re not well-pleaded and must be discarded"); *Barr*, 2023 WL 6393480, at *5 (ruling similarly); *Callier v. Nat'l United Grp., LLC,* 2021 WL 5393829, at *7 & 9-10 (W.D. Tex. Nov. 17, 2021) (same).

**Second**, as noted above, "[f]or purposes of establishing damages [for an alleged DNC violation] under 47 U.S.C. § 227(c)"—which is what Plaintiff invokes for both Count I and Count II—"violations of multiple regulations constitute one violation." *Aussieker,* 2024 WL 379394, at *5.

---

[10] For example, Plaintiff cannot maintain a separate cause of action under the internal DNC regulations solely on the basis of any alleged failure to provide a copy of an internal DNC policy on demand. *See, e.g., Hamilton v. Voxeo Corp.*, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) (granting summary judgment on this basis, applying *inter alia, GVN Michigan*). Rather, Plaintiff may "only recover for a call made at a time when [Sonic] did not have such a policy in place." *Id.*

This means that "[a] plaintiff cannot seek multiple damages where one call violates multiple [DNC] regulations." *Id*. As applied here, Count II is duplicative of Count I, as they both are based on the same alleged set of texts; as such, Count II should be dismissed for this additional reason. *See, e.g., DFS Servs. LLC*, 781 F. Supp. 2d at 592 (dismissing duplicative § 227(c) count under Rule 12(b)(6), holding that statutory damages under the TCPA are only recoverable on a "per-call basis" and that "failing to state separate violations of the TCPA" DNC rules warranted dismissal for "fail[ing] to state claims upon which relief can be granted") (citing *GVN Mich.,* 561 F.3d at 631-632 ).[11]

> **D.    The FAC Should Be Dismissed With Prejudice.**

The FAC represents Plaintiff's second failed attempt to plead a valid TCPA claim against Sonic in this case. There is no reason to give him a third opportunity. If Plaintiff had more facts to allege, rather than more conclusions, he could and should have pled them by now. That he did not after amending leads to one conclusion: none exist. Moreover, Plaintiff cannot amend around his obvious lack of Article III standing. Therefore, any further attempt and amendment would be futile and, as such, the FAC should be dismissed with prejudice. *See, e.g., Milliman v. County of Stearns,* 2013 WL 5426049, at *16-17 (D. Minn. Sept. 26, 2013) (dismissing claims with prejudice where claimant "has had ample opportunities to properly assert specific facts to support [its] claims").

## V.    CONCLUSION

For the reasons above, Plaintiff's FAC must be dismissed in its entirety and with prejudice.

---

[11] Apparently seeking treble damages, Plaintiff's FAC also concludes that the purported TCPA violations in this case were "negligent, willful, or knowing." Dkt. 11, ¶¶ 47, 77, 82. But Plaintiff's allegations lack any facts showing that Sonic knowingly texted a number registered on the National DNC Registry in violation of the TCPA's DNC provisions. This too warrants dismissal. *See, e.g., Koeller v. Seemplicity Sec. Inc.*, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024) (Clark, J.) (dismissing for failure to plead facts showing that the defendant knew that the plaintiff had registered his phone number on the national DNC registry, nor any facts showing the defendant purposely called a residential telephone subscriber who had registered his number on the national DNC registry); *Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *6 (D. Conn. May 6, 2020).

Dated: April 2, 2025                              Respectfully submitted,

                                                 By: /s/ *A. Paul Heeringa*
                                                 A.  Paul Heeringa (Bar # 6288233IL)
                                                 Madelaine A. Newcomb (MO68294)
                                                 MANATT, PHELPS & PHILLIPS, LLP
                                                 151 N. Franklin Street, Suite 2600
                                                 Chicago, IL 60606
                                                 Telephone: (312) 529-6300
                                                 Email: pheeringa@manatt.com
                                                         mnewcomb@manatt.com

                                                 *Counsel for Defendant*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on, April 2, 2025, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.


                                                 */s/ A. Paul Heeringa*


16