# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SONIC INDUSTRIES SERVICES, LLC <br><br> Defendant. | Case No. **4:25-CV-00035-JMB** <br><br> **JURY TRIAL DEMANDED** |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Defendant's boilerplate motion is based on demonstrably false and faulty contentions that cry out to discovery to resolve. The Plaintiff has pled, and at the pleadings stage, such allegations must be entitled to credit, that he did not consent to receive the subject text messages, which he has plausibly pled that Sonic directly sent. A declaration of Mr. Morris supports the assertion that Mr. Morris was harmed because he did not consent to the messages and revoked any perceived consent, including by two emails and text. Moreover, the additional reasons why the Defendant contends this case should be dismissed have all been rejected by multiple other courts.

Defendant's motion should therefore be denied in its entirety.

## II. FACTUAL BACKGROUND

The Plaintiff filed the instant complaint alleging violations of the Telephone Consumer Protection Act for unsolicited text messages which Defendant placed to his number on the National Do Not Call Registry, including after he had texted "stop" to opt out, and after he wrote emails seeking the same. The Defendant has filed a Motion to Dismiss. This response follows.

## III. LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). A facial challenge goes to the sufficiency of the pleading itself, and in such a motion, the court must take the allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* If, however, the defendant mounts a factual challenge, the defendant must submit affidavits, testimony, or other evidentiary materials supporting the lack of subject matter jurisdiction. The burden then shifts to the Plaintiff to demonstrate that the court has subject matter jurisdiction, including through additional affidavits,

1

testimony, and other evidence of the plaintiff's own. *Id.* Defendant appears to mount a factual challenge to the Plaintiff's complaint.

But even when a factual attack is involved, as with a motion under Rule 12(b)(6), a motion under 12(b)(1) should be granted only if the jurisdictional facts in the complaint are untethered to the merits thereof. A trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682 (1946). When the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery. *Id.* In such a case, where the jurisdictional facts and the facts central to a tort claim intertwine, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues. *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

2

### IV.  ARGUMENT

*A.  The Plaintiff has plausibly alleged that he did not consent and that he did not want the messages because he revoked consent, including twice in writing. The factual issues surrounding this affirmative defense must be sorted out in discovery.*

As the Defendant has submitted an affidavit (without supporting evidence) in support of its argument that this Court lacks subject matter jurisdiction, the Defendant is attempting a factual challenge. And in a factual challenge, the Plaintiff is entitled to submit evidence, such as a declaration, as he does here, evidencing facts which support the exercise of subject matter jurisdiction. Here, Defendant's factual challenge must fail both because it is inappropriate as a matter of law on the consent issue and because Mr. Morris effectively revoked his consent at least three times, including twice by email in November and December.

This Court's power to hear cases, its subject matter jurisdiction, derives from Article III of the Constitution, which limits this Court to adjudicating "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. In *Lujan*, the Supreme Court distilled the constitutional limits of Article II standing into three distinct elements: injury, traceability, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Defendant challenges only the first element. But the Plaintiff himself has established that he has been injured in that he received the subject text messages from the Defendant without his consent, and indeed, after having attempted to revoke consent at least three times both by email and text message.

Start with Defendant's first challenge: the Plaintiff was not injured because he consented. Not only is that contention factually untrue, as the Plaintiff's declaration makes clear, but consent is an affirmative defense, not an element of the Plaintiff's claim as to whether he was injured. In other words, the factual nature of the consent inquiry renders the jurisdictional issue "so bound up with the merits that a full trial on the merits is necessary to resolve the issue."

3

*Johnson v. United States*, 534 F.3d 958, 963 (8th Cir. 2008). Moreover, whether a plaintiff in a TCPA suit has consented to the calls is a factual issue proved *by the defendant* through discovery, particularly as it is an affirmative defense upon which the Defendant bears the burden of proof. "Express consent is an affirmative defense on which the defendant bears the burden of proof." *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). However, the Defendant here weaponizes the disputed issue of whether the Plaintiff consented to the initial subject communications, and its affirmative defense of consent, into a factual jurisdictional challenge that is wholly improper. Indeed, a court will only grant a motion to dismiss based on an affirmative defense if the plaintiff's complaint pleads all elements for the defendant to make such a showing at the pleadings stage. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

Mr. Morris' complaint makes no such concession that he provided his prior express written consent to receive the messages. Despite the fact that Mr. Morris is not required to plead the lack of the Defendant's *affirmative defense*, he has done so. And simply having an affirmative defense to the litigation does not translate to a lack of injury, as an affirmative defense is not an element of the plaintiff's case necessary to demonstrate an injury in fact for Article III standing purposes. *See Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1140 (D. Minn. 2017) (denying 12(b)(1) motion to dismiss when that claim was based on an affirmative defense). And as at least one court has held in denying a substantially similar motion when considering the issue of consent in the context of a 12(b)(1) motion to dismiss:

> Direct Energy asserts that Shelton consented to the call by completing an online survey indicating interest. Shelton "unequivocally denies having visited the unidentified website that KAA Energy asserts is the basis for calling him." This court has ruled that "express consent...is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." Thus, it is not an issue to be determined on a motion to dismiss the amended complaint

4

*Shelton v. Direct Energy, L.P.*, No. 1:19CV0081, 2019 WL 4194179, at *5 (N.D. Ohio Aug. 27, 2019). And as yet another court has remarked, "Defendant's argument conflates its affirmative defense of consent with whether Plaintiff has Article III standing. . . . [T]he issue of consent is better resolved after discovery. This is especially true given that whether Mr. Cabral gave Penske consent for the communication goes directly to the merits of Mr. Cabral's claims." *Cabral v. Penske Truck Leasing Co. LP*, No. 1:23-CV-01316, 2024 WL 1916701, at *4-*5 (M.D. Pa. May 1, 2024). Indeed, as this very Court has observed, the legal infirmity with the Defendant's motion is clear in that it conflates the elements of the plaintiff's affirmative *claim*, subject to an Article III standing analysis, with that of a *defense*, which is not subject to the same analysis:

> Credit Management's first statutory standing argument is based on its contention that only a "called party" has standing to raise a TCPA claim, and this plaintiff was not a "called party." Looking at the language of the TCPA private right of action language above, there is no support for Credit Management's argument. By its plain language, the TCPA grants standing to any "person or entity." The only relevant reference to a "called party" in this section of the statute appears in one of the affirmative defenses to enforcement of the statute: a call made with the prior express consent of the called party. This does not in any way limit the class of people who may bring a cause of action under the statute to "called parties."

*Swope v. Credit Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830, at *2 (E.D. Mo. Feb. 19, 2013). Nothing in the Constitution requires a plaintiff to plead more than the basic allegations of injury here, and a defendant cannot use Rule 12(b)(1) as a way of inappropriately forcing a plaintiff to do so, let alone on the basis of an affirmative defense. *Saggio v. Medicredit, Inc.*, No. 4:22-CV-01005, 2023 WL 3203333, at *3 (E.D. Mo. May 2, 2023) ("And many district courts have expressly deemed lack of consent an affirmative defense to be proven by the defendant. . . . The complaint is not insufficient for lack of a specific pleading on this issue.").

Defendant's attempt to recast its affirmative defense of consent into some perverse notion that the Plaintiff was not injured because the calls were somehow wanted in the face of the Plaintiff's effective revocation of any purported consent fares no better. All Defendant does in

5

this regard is to impermissibly recast its affirmative burden into a burden on the Plaintiff at the pleadings stage. As the Plaintiff's own declaration makes clear, the Plaintiff did not want the subject messages and in fact attempted (unsuccessfully) to get them to stop, including on November 13, just days after the initial messages, and again on December 6, after his request to stop went unanswered. Defendant provides no evidence tending to show that Mr. Morris wanted the calls, any evidence controverting his allegations that the calls were unwanted and unsolicited, or that he welcomed the intrusion and invasion of privacy that they caused.

In sum, as the Morris Declaration makes clear, Mr. Morris revoked his consent on at least three occasions:

- The first such revocation occurred on November 6, when Plaintiff texted "Stop" but continued to receive messages. (Am. Compl. ¶ 32). That should have been the end of the Plaintiff receiving messages.
- Then, Mr. Morris emailed a letter and screenshots of the fact that his "Stop" request was not being honored to Sonic's brand president and Sonic's president and chief operating officer. That message was unequivocal, requesting that they "give me every assurance that the offending communications that are the subject of this matter will be the very last that I receive." He received no response and continued to receive messages. (Morris Dec. ¶ 16-18). Accordingly, Sonic was on notice of its failure to stop texting Mr. Morris as far back as November 13, 2024, just days after the subject messages.
- Finally, after almost a month went by without a response, Mr. Morris again emailed the general email and privacy email, and received an automated response stating that it would be "reviewed and responded to in 7-10 business days." Despite the message being sent on December 6, Mr. Morris continued to receive text messages into the new year and through the filing of his Complaint. (Morris Dec. ¶ 19-21).

Those are not the actions of someone who wanted the text messages or was uninjured.

To the contrary, these allegations and actions further demonstrate that the messages substantially injured Mr. Morris, who states:

> To be clear, I do nothing to precipitate the illegal messages which are placed to me. I do not want these communications, but they continue to be placed to me. They are highly annoying and disruptive and are especially problematic after you ask them to stop but you are not able to get them to stop. I was harmed and injured by the Defendant's calls. In addition to the harm of receiving texts I did not want and explicitly asked multiple times to stop, I was deprived of legitimate use of network resources, bandwidth, power, and

6

>storage space and my privacy was improperly invaded. Additionally, my statutory rights as recognized by the TCPA were violated. Illegal calls are frustrating, obnoxious, and annoying. They are a nuisance and disturbed my solitude. Furthermore, I wasted my time in attempting to get the messages to stop without any results. My number is on the Do-Not-Call Registry, and I did not provide any consent for anyone to send the calls at issue to me. I do not and have never welcomed nor wanted illegal calls and do nothing to receive or deserve them. My injury was done completely at the hands of Defendant, who took it upon itself to send me multiple texts in violation of the TCPA, including after I asked them to stop. (Morris Dec. ¶ 22-25).

In this respect, Defendant miscites to the authorities it cites for the proposition that the allegation of consent means that the calls were solicited to demonstrate lack of an injury-in-fact at the pleadings stage, as in each of those cases, there was an admission of consent and no revocation. *Contra Franklin*, 2017 WL 3219253, at *4 (holding that dismissal of TCPA case on purported consent is only appropriate if consent is pled on the face of the complaint). In *Winner*, *Stewart*, *Hall*, and *Nomax*, the Plaintiffs, unlike here, all *admitted* or pled facts that led the court to conclude that they consented to receive the subject text messages. *Winner v. Kohl's Dep't Stores, Inc.*, No. CV 16-1541, 2017 WL 3535038, at *1 (E.D. Pa. Aug. 17, 2017) (conceding that plaintiff signed up but that disclaimer was "barely visible"); *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021) (dismissing internal do not call claim when the plaintiff's evidence pled did not constitute a legally sufficient request not to be called); *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023) (dismissing case when defendant produced "uncontroverted evidence" that the plaintiff submitted her information to website); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 504 (8th Cir. 2018) (dismissing case when the plaintiff *conceded* that the faxes were transmitted with consent).

That is plainly not the case here. Not only has Mr. Morris confirmed in his declaration that he did not consent, the declaration and exhibits thereto further confirm that Mr. Morris contacted various individuals and emails at Sonic and Inspire Brands, Sonic's parent company,

7

regarding the receipt of unsolicited text messages on November 13 and December 6, 2024, with the texts continuing through February, as pled in the complaint. Those actions, in addition to his efforts to text STOP on multiple occasions, demonstrate that Mr. Morris attempted to get the messages to stop and revoke any purported consent at least three times. Based on the foregoing declaration and evidence of written communications demonstrating a desire not to receive them, there can be no question that the text messages Mr. Morris received were unwanted, undesired, and caused Mr. Morris significant harm, therefore demonstrating an injury in fact.

B.     *Defendant's position that the Plaintiff did not plausibly allege that it directly sent the subject text messages is at odds with its consent defense and is frivolous.*

Defendant's next position is boilerplate, to put it generously. However, it has no place here as there is substantial evidence in this case that demonstrates that the Defendant sent the text messages. This includes text messages *linking to the Defendant's website*, identifying the Defendant and its products *by name*, and by having its very own website *admit that the short code used is its short code*. Thus, Defendant takes a frivolous position in arguing that the Plaintiff has not plausibly made out a case supporting the exercise of direct TCPA liability, despite the aforementioned evidence demonstrating that Defendant operates the 876642 short code to send text messages promoting its products. The position taken here is all the more problematic because it is inconsistent with the Defendant's claims in its 12(b)(1) motion that the Plaintiff consented to receive the subject messages, including because he is alleged to have sent an "inbound text message with the keyword 'STLOUIS' to the short code 876642," which is also the Defendant's short code. (Skelly Dec. ¶ 9). The Skelly Declaration also admits that Sonic sent out text messages from that short code, as well. (Skelly Dec. ¶ 10, 11). It is axiomatic that a TCPA defendant cannot rely on consent conveyed to some other third party using a number that it does not even own or use. As such, Defendant's argument that it did not send the messages is

8

inconsistent with its consent claims. This unsupported position was outlined by Plaintiff's counsel in a letter attached herein as Exhibit B that was sent following receipt of the underlying filing. The endgame is this: the Plaintiff has plausibly alleged a theory of direct liability against Defendant because the aforementioned facts demonstrate that the Defendant sent the text messages. Defendant should know better because its own motion concedes that it sent the texts at issue. Indeed, the chief argument advanced in the motion, that the Plaintiff somehow consented to the subject communications, is materially contradictory to and inconsistent with the position taken in the 12(b)(6) portion of the Defendant's motion as well as the Defendant's own declaration. And, of particular moment here, such facts as described in Ms. Skelly's declaration would only be in the particular and unique knowledge of the sender of the text message as an initial matter. As such, Defendants know that they sent the subject text messages but filed the instant motion anyway.

Nor does the Plaintiff's complaint "refer[] to third parties at various points." All the Plaintiff has pled, consistent with the mountain of case law on direct liability TCPA matters, is that discovery *might* reveal that third parties might also be liable for the conduct alleged. For example, if Defendant outsourced its customer service responsibilities to a third party, that third party might also be liable for a failure to process the Plaintiff's opt out or properly communicate it to the defendant. The Defendant's employee that sent the subject messages may also be personally liable under the TCPA. In any event, even such a circumstance would nevertheless be consistent with a finding of direct TCPA liability. The Defendant's related argument that the Plaintiff has insufficiently pled direct liability by pleading, in the alternative, that discovery may reveal third parties who may also be directly or vicariously liable for the calling conduct alleged, such as the phrase, "affiliates, agents, and/or other persons or entities which discovery may

9

reveal may have been acting on Defendant's behalf" in various parts of the complaint is unavailing. This is simply a case of the Plaintiff pleading in the alternative other potentially liable defendants which discovery may in due course reveal. FED R. CIV. P. 8(d)(2), (3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.; A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Slaughter v. Bass Pro, Inc.*, 648 F. Supp. 3d 1108, 1123 (W.D. Mo. 2023) (refusing to dismiss case against "manufacturers and/or sellers" of a product and permitting alternative claims for breach of warranty and unjust enrichment to proceed). But pleading in the alternative in no way undermines the well-pled allegations in the complaint and evidence, as well as the Defendant's own admission, that the Defendant directly sent the text messages at issue.

It is readily apparent, therefore, that the Plaintiff has plausibly pled a case for direct liability under the TCPA. The allegations in the Plaintiff's amended complaint support no other logical conclusion other than that the Defendant directly sent the text messages at issue. This is all well supported by the facts easily obtained from the plain face of the Complaint, including because the short code 876642 is the Defendant's short code, the text messages offered the Defendant's food products, including by the SONIC brand name, the links in the text message led to the Defendant's website advertising products, including hamburgers and hot dogs, that Sonic sells. The messages were obviously sent by the Defendant, by its *own admission in its declaration*, giving rise to a claim for direct liability under the TCPA.

For all its sabre-rattling about pleading physical initiation of a call under the TCPA, the relevant case law also makes clear that a person need not physically initiate or dial a call in order

to be directly liable for the call; indeed, a caller can initiate the call through another if they "take the steps necessary to physically place a telephone call." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6583 (2013). An employee placing a call for a company's behalf, together with several other even more remote types of conduct, including securing a telephone connection, providing reports, and contracting for call center services, are all actions which are sufficient to "initiate" a call and impose direct liability. *In re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013) and *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *10 (S.D. Ohio Mar. 20, 2014) for the proposition that "in evaluating the TCPA liability of third parties who engage robocalling services, courts have assumed liability of the latter for any illegal calls made using the service, explaining that 'the language of the Act indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves.'").

In sum, this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint on the bases alleged, including based on the Defendant's own contradictory pleadings in this regard, as other courts have done with far less problematic boilerplate motions than those proffered by Defendant's counsel here. *See, e.g.*, *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (holding sufficient allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business"); *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d

11

727, 746 (N.D. Ill. 2014); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *4 (D.N.J. July 21, 2021); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023).

Defendant cites to various non-binding decisions in search of a contrary result. To this regard, the other cases cited by the Defendant are all inapposite because they all deal with other third-party entities who had involvement on face. In *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-CV-07129-YGR, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018), the Court dismissed claims against another company, Yelp, when the Plaintiff's allegations indicated that "Buffalo Wild Wings restaurants, initiated the text messages" sent by hostesses to encourage the Plaintiff to download the Yelp app so that he could "[c]heck [his] place in line," but allowed the Plaintiff's claims against the restaurant to proceed. *Id.* Not so here, where the Plaintiff pleads no even remotely parallel facts. Several of the cases cited by the Defendant actually support the Plaintiff's allegations. *Frank v. Cannabis & Glass, LLC*, No. 2:19-CV-00250-SAB, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019), actually supports the Plaintiff because there, as here, the seller was named in the text messages. There, where the complaint was devoid of any facts indicating that Springbig, a cannabis marketing platform, sent text messages which, as here, named Cannabis & Glass, and the case was dismissed as to Springbig, but permitted the case to proceed against the named defendant. *Id.* Similarly, in *Woodard v. Health Ins. All.*, for example, Court dismissed a direct liability claim against HIA when the plaintiff alleged "in the same breath" that "a third party," not HIA, called her and lacked any allegations as to the third-party's

12

agency. No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024). Not so here, where the *only* company mentioned on the calls was Sonic.

And the Plaintiff's (as well as the Defendant's own contradictory) allegations here far exceed those the court were conclusory and insufficient in *Aaronson v. CHW Grp., Inc.*, for example, as there, the complaint was "devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls." No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019). The other cases cited by Defendant, on its own admission, including *Brown*, and *Murray*, similarly pled no additional facts to allow the court to conclude that the defendant directly placed the calls. That is plainly not the case here, where the Plaintiff not only points to text messages advertising Sonic products, but the text messages *also* bear indicia that Sonic identified itself, plead the substance of the text messages, including the products promoted, as well as points to *Sonic's own website* which admits that it sends marketing text messages of the type here *from the same short code*, and Ms. Skelly's *admission that Sonic received and sent messages* from the same short code in 2020 as part of the purported opt in. This Court should deny Defendant's 12(b)(6) motion on this basis as well.

C.      *Plaintiff has pled the straightforward elements of an internal do not call claim.*

Defendant pleads two other reasons why the Plaintiff has not pled an internal do not call claim. Both of them must fail.

*First*, the Plaintiff plainly pleads that he effectively revoked any purported consent, including by texting STOP, and, as noted in Mr. Morris' declaration as it pertains to the 12(b)(1) motion, via multiple emails sent in November and December. The TCPA permits a consumer to revoke any purported consent to receive calls "at any time" and "through any reasonable means." *In re Rules of TCPA of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961, 7993-99, paras. 55-70 (2015). As a result, a consumer

13

"may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." *Id.* at 7998-99, para 70. Defendant misconstrues the applicable regulation, 47 C.F.R. § 64.1200(d)(3), which can be violated either by (1) refusing to place a plaintiff's number on an internal do-not-call list, or (2) calling a number, despite it being on an internal do-not-call list. *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021); *see also Menin v. Star Markets Co., Inc.*, No. 23-CV-11918-DJC, 2024 WL 4123522, at *5 (D. Mass. Sept. 9, 2024) (denying motion to dismiss and holding that whether procedures were reasonable was a question for the jury). Indeed, as the Western District of Missouri has remarked in rejecting an identical argument to the one advanced by the Defendant, "Plaintiff alleges that she repeatedly instructed Defendant to stop sending her text messages. Despite those instructions, Plaintiff continued to receive text messages. At the motion to dismiss stage, it is reasonable to infer that Defendant did not have internal procedures regarding do not call request." *Eagle v. GVG Cap., LLC*, No. 22-CV-00638-SRB, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023).

The authorities cited by the Defendant are likewise distinguishable or also help Plaintiff. In *Laccinole v. Rocket Mortg., LLC*, for instance, the court actually *denied* the defendant's motion to dismiss since the Plaintiff alleged that he "asked Rocket Mortgage to stop calling him and that he received more than one marketing and/or solicitation phone call within one year from Rocket Mortgage." 609 F. Supp. 3d 68, 74 (D.R.I. 2022). And in *Appriss*, the court gave little consideration to the issue, because it concluded that the Plaintiff failed to state a claim that the plaintiff did not state a claim on another basis. *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 505 (D.R.I. 2020). Similarly, in *Bailey v. Domino's Pizza, LLC*, the Plaintiff did not "not allege

14

that he made any such affirmative request to Defendant, and therefore it is not clear how the provision was violated." *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). Defendant's motion to dismiss on the basis that the plaintiff has failed to allege facts citing to improper internal procedures for mainlining an internal do not call list should therefore fail, as Plaintiff has clearly pled such facts here.

*Second*, the Plaintiff is entitled to plead and recover for multiple violations of the TCPA's provisions. Courts are split as to whether a plaintiff can seek multiple *damages* under different provisions of the same subsection of the TCPA for the same call. However, courts are in uniform agreement that plaintiffs can nevertheless *plead* that multiple violations during the same call, even if they may ultimately be permitted to recover damages for only one claim. The Court under Rule 12(b)(6) looks to whether a plaintiff has stated a claim upon which relief can be granted, not whether those claims may lead to double recovery at the end of the litigation, and, as explained above, pleading alternative theories of liability is permissible. FED. R. CIV. P. 18(a). In rejecting an identical motion as here, brought by same law firm for Defendant, "plaintiffs can plead multiple claims in the alternative and that any potential recovery should only be limited at the time of trial." *Jubb v. CHW Grp., Inc.*, No. 23CV23382, 2025 WL 942961, at *7 (D.N.J. Mar. 28, 2025). This Court should likewise hold.

*Finally*, it is inappropriate to dismiss with prejudice without giving the Plaintiff an opportunity to amend, and this Court cannot dismiss on a 12(b)(1) basis with prejudice as a matter of law, as a court without subject matter jurisdiction has "no judicial power to do more than simply dismiss the case." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 913 (8th Cir. 2016).

## V. CONCLUSION

This Court must deny Defendants' motion to dismiss in its entirety. Alternatively, it should permit the Plaintiff to amend to correct deficiencies as necessary.

RESPECTFULLY SUBMITTED AND DATED this April 16, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> E.D. Mo. # 333687PA
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

### CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: April 16, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.